IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARIO DANT'E RAMSEY,           )
                                )
            Plaintiff,          )
                                )
        v.                      )        1:22CV610
                                )
T. BETHEA, et al.,              )
                                )
            Defendants.         )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon a Motion for Summary Judgment by Defendants Tony Bethea ("Bethea"), Rosalyn Hester ("Hester"), and Jeffrey Limkemann ("Limkemann") (together, "Defendants") (Docket Entry 42.) Plaintiff Mario Dant'e Ramsey has also filed a cross Motion for Summary Judgment. (Docket Entry 47.) The Court construes Plaintiff's brief in support of his Motion (Docket Entry 48) to also be a response in opposition to Defendants' Motion for Summary Judgment. (*See* Text Order dated 4/26/2024.) For the reasons that follow, the undersigned will recommend that Defendants' Motion for Summary Judgment be granted, and Plaintiff's Motion for Summary Judgment be denied.

**I.    BACKGROUND**

Plaintiff, a *pro se* prisoner, filed this action alleging an excessive force claim against Defendants[1] surrounding an incident that occurred while he was housed at Scotland

---

[1] Plaintiff also named one other Defendant, "Officer Woods," whom the North Carolina Department of Public Safety was unable to procure a waiver of service of process for because said individual could not be identified as a prison employee. (*See* Docket Entry 11.) Approximately six months later, Plaintiff sought to procure a waiver of service of process on a proposed defendant,

Correctional Institution (hereinafter "Scotland") on April 7, 2022. (*See* Compl., Docket Entry 2 at 4-8.)[2] More specifically, Plaintiff alleges that he was "jumped" by Scotland officers and while he was unable to see who the individuals were, there was an officer in a booth and a camera in the area where the incident occurred. (*Id.* at 5.) Plaintiff alleges that he was stumped, beat with a stick and "shot . . . with 2 tazers [sic]." (*Id.*) As a result of the incident, Plaintiff had to be airlifted to the hospital, and endured two surgeries before being transferred to Central Prison Hospital. (*Id.*) Plaintiff alleges that, for a second time, he has suffered a broken leg in two places while housed at Scotland. (*Id.*) Plaintiff seeks monetary damages. (*See id.*) Plaintiff's Complaint, thus, alleges a claim of excessive force under the Eighth Amendment.[3]

After discovery, Defendants moved for summary judgment, arguing that there are no genuine issues of material fact and that they are entitled to prevail as a matter of law as to all

---

stating that Officer Woods' correct name was "Haywood." (Docket Entry 30.) Plaintiff's motion was denied as the Court explained that Plaintiff should amend his pleadings. (*See* Docket Entry 33 at 5.) The Complaint was never amended to add new claims against any proposed defendants. Therefore, having not been served, and there being no good cause as to why service has not been made, the undersigned will recommend that Officer Woods be dismissed without prejudice under Federal Rule of Civil Procedure 4(m).

[2] Unless otherwise noted, all citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[3] Plaintiff's Complaint also notes that his Fourth Amendment rights have been violated, (*see* Compl. at 3); however, his claim arises in the context of an Eighth Amendment violation. *See Pennington v. Mercer Cnty. Comm'n*, No. CV 1:21-00335, 2023 WL 3607267, at *6 (S.D.W. Va. May 23, 2023) ("As a sentenced prisoner, the Eighth Amendment's ban on cruel and unusual punishment, rather than the Fourth Amendment, applies to [Plaintiff's] excessive-force claim."); *see also Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015) ("When convicted prisoners bring claims of excessive force, we turn to the Eighth Amendment, which forbids the 'unnecessary and wanton infliction of pain' that constitutes 'cruel and unusual punishment,' and specifically conduct that is malicious and sadistic." (internal citation omitted)); *Graham v. Connor*, 490 U.S. 386, 394 (1989) (Fourth Amendment excessive force claims "arises in the context of an arrest or investigatory stop of a free citizen").

claims against them. (Docket Entry 42.) Along with a brief in support of their motion, Defendants filed declarations on their own behalf. (*See* Declaration of Rosalyn Hester ("Hester Decl.", Docket Entry 44-1; Declaration of Jeffrey Limkemann ("Limkemann Decl."), Docket Entry 44-7; Declaration of Tony Bethea ("Bethea Decl."), Docket Entry 44-8.) In addition, attached to Hester's declaration is video footage surrounding the alleged incident and records maintained by the North Carolina Department of Adult Correction ("NCDAC") regarding Plaintiff. (*See* Docket Entries 44-2 through 44-6.)[4]

In pertinent part, while Defendants were on duty at Scotland on April 7, 2022, Bethea was neither present at, nor participated in the incident involving Plaintiff. (Hester Decl. ¶¶ 5, 18; Limkemann Decl. ¶¶ 5, 21; Bethea Decl. ¶¶ 4, 5.) On that day, a Code 4 was called in KPODD on the Green Unit, to which both Hester and Limkemann responded by running up a narrow stairway. (Hester Decl. ¶¶ 5-6; Limkemann Decl. ¶¶ 5-6.) At the top of the staircase, Limkemann proceeded through the entry to KPODD just as Plaintiff was fleeing the area. (Limkemann Decl. ¶ 8.) Limkemann states that he was struck twice in the arm and once in the chest by Plaintiff, before Plaintiff ran away down the staircase. (*Id.* ¶ 9.)

When Plaintiff arrived at the staircase, Hester was near the top of the staircase, and Plaintiff started toward Hester. (Hester Decl. ¶ 7.) He then attempted to punch Hester in the face, missing and instead striking Hester on the right side of her neck. (*Id.* ¶¶ 8-9.) Hester states that she was able to maintain her balance, however "Plaintiff's momentum from swinging . . . caused him to fall face first onto the stairs and then slide head first all the way

---

[4] A manual filing of the video footage was filed with the Court. (*See* Text Order dated 5/8/2024.)

down to the bottom of the stairs." (*Id.* ¶¶ 10-11.) Limkemann, who had chased Plaintiff after being struck by him, also witnessed Plaintiff falling down the stairs. (Limkemann Decl. ¶ 10.)

Limkemann followed Hester down the stairs. (*Id.* ¶ 11.) Once at the bottom of the stairs in the elevator lobby, Limkemann avers that Plaintiff attempted to stand and run though unsuccessfully because of a leg injury. (*Id.* ¶¶ 12-13.) Unaware of Plaintiff's injury and thinking "Plaintiff was going to get up and attempt to hit [her] again," Hester "attempted to kick [Plaintiff's] feet from under him" to prevent him from standing until other officers arrived to assist her. (Hester Decl. ¶ 13.) When other officers arrived, Plaintiff continued to violently struggle, and both Hester and Limkemann assisted in trying to gain control of Plaintiff. (*Id.* ¶¶ 14-15; Limkemann Decl. ¶¶ 15-16.) Limkemann attempted to restrain Plaintiff's left arm but after about one minute and 15 seconds, he stopped while other officers continued their efforts to restrain Plaintiff. (Limkemann Decl. ¶ 17.) Limkemann then left the area and went up the staircase to KPODD where he observed another inmate on the floor of Plaintiff's cell. (*Id.* ¶¶ 17-18.) As to Hester, she assisted with subduing Plaintiff for about 11 seconds before going back upstairs to KPODD. (Hester Decl. ¶ 15.) She "discovered another offender laying on the floor with one foot on the bed and the other on the floor with his head laying to the right with what appeared to be blood coming out of his left ear." (*Id.* ¶ 16.) Emergency personnel were called, and Hester remained with the inmate until they arrived. (*Id.*)

Both Hester and Limkemann state that when they assisted the other officers in trying to gain control of Plaintiff during his violent struggle, Hester and Limkemann had no malicious or harmful purpose but rather intended to gain control of Plaintiff and maintain order. (Hester Decl. ¶ 17; Limkemann Decl. ¶ 20.)

Defendants have submitted video evidence in support of their motion for summary judgment. One video is footage of the K-green housing south main stairwell. Limkemann is seen running upstairs and exiting the stairway on the right. (Stairway video at 10:54:09-10:54:17.) Hester is running several steps behind Limkemann, and after Limkemann exits, Plaintiff appears from the right entryway, heading downstairs. (*Id.* at 10:54:14-10:54:24.) Plaintiff then violently swings at Hester's face, she dodges the punch to her face, and Plaintiff then falls down the stairs while three officers including Hester follow. (*Id.* at 10:54:24-10:54:30.) Plaintiff stands up at the bottom of the stairs and continues to run. (*Id.* at 10:54:30-10:54:38.)

In the elevator lobby area, Limkemann and Hester are first running towards the south main stairwell. (Elevator Lobby video at 10:54:07-10:54:15.) Approximately 15 seconds later, Plaintiff enters from the right, falling on the floor, and Hester follows with an object in her right hand. (*Id.* at 10:54:31-10:54:35.) Hester appears to kick Plaintiff's right side while Plaintiff crawls on the floor and other prisoner officials enter the left lobby area. (*Id.* at 10:54:35-10:54:38.) For several seconds, Hester is standing over Plaintiff, some of which time is used assisting other officers in restraining Plaintiff. (*Id.* at 10:54:39-10:54:56.) For approximately one minute and 15 seconds, Limkemann attempts to assist in restraining Plaintiff, including holding his left arm. (*Id.* at 10:54:39-10:55:55.) Plaintiff can be seen struggling with officers before officers were able to gain control of him. (*Id.* at 10:54:46-10:57:42.) While limping, Plaintiff is subsequently escorted from the area with the assistance of officers. (*Id.* at 10:57:43-10:58:49.)

In the third video, the KPODD housing area is shown. (KPODD housing unit video.) Inmates are seen outside the cell units. (*Id.* at 10:41:17-10:54:01.) At some point, a prison official enters the area, runs out, and inmates began motioning towards a particular cell unit. (*Id.* at 10:54:18-10:55:50.) Prison officials then enter the area, securing prisoners in cell units while medical staff arrive and remove an individual using a stretcher. (*Id.* at 10:56:18-11:03:59.)

In response to Defendants' motion for summary judgment, Plaintiff under penalty of perjury disputes much of Defendants' version of events. (Docket Entry 48.) According to Plaintiff, he exited his cell on the morning of the alleged incident seeking assistance from the booth officer due to a medical emergency for himself and another inmate. (*Id.* at 1.) Limkemann was summoned to the area and as Plaintiff explained the situation, Limkemann stopped him, stating there would be no medical emergency called. (*Id.* at 1-2.) As Limkemann was speaking, he did a small arm gesture, which the booth officer thought was a signal to open the slider door. (*Id.* at 2.) Once the door opened, Plaintiff states that he went around Limkemann and exited the block to get medical attention. (*Id.*) Next, Plaintiff states that

> [O]n my way down the stairs I tripped and tried to get my balance[.] I had my arms out in front of me and [Hester] was running up the stairs with the baton in her hand[.] I tried to grab her to keep from falling[.] She pushed me to the left of the stairs . . . I grab[b]ed the rail to keep from falling[.] I slid down on my stomach[. W]hen I got to the bottom of the stairs I got up and continued to proceed to main medical and I was hit with the baton in which I fell [due] to the impact of being hit in the leg by [Hester. A]fter I was hit in the leg I crawled for 10 to 15 seconds then I started feeling people kicking me . . . and stumping me all on my right side as I was being assaulted[.]

6

(*Id.*) Plaintiff further states that another prison official named "Lt. Locklear" approached and told Plaintiff that he needed to get up, but Plaintiff begged Lt. Locklear to instruct the officials to stop beating him. (*Id.* at 2-3.) Plaintiff reiterates that he was shot with 2 taser guns, one on his left side and one on the right. (*Id.* at 3.) After seeing its ineffectiveness, Defendants and an unknown officer removed them. (*Id.*) Plaintiff's shoes were also removed and never returned to him. (*Id.*)

Plaintiff further avers that he was then taken by wheelchair to be examined by medical staff. (*Id.*) He informed medical staff that he was sprayed with 2 cans of mace, hit with a baton, and sustained two taser shocks. (*Id.* at 3-4.) At that point, Bethea denied that a taser was used on Plaintiff, but medical staff concluded that Plaintiff needed to be taken to the hospital. (*Id.*) Plaintiff was sent to the hospital, flown to another hospital where he stayed for 11 days, then was transported to Central Prison in Raleigh, North Carolina. (*Id.*) The following day after arriving at Central Prison, Plaintiff states that Bethea came and verbally threatened him. (*Id.* at 4-5.)[5]

## II. DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir.

---

[5] Plaintiff's response also states that Lt. Locklear was negligent and breached her duty of care during the incident. (Docket Entry 48 at 5, 8-9.) However, Lt. Locklear is not a named defendant in this action. (*See* Docket Entry 31; Docket Entry 33 at 5-6.)

1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met their burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear their burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the Court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

As previously stated, Plaintiff's response to Defendants' summary judgment motion was filed under penalty of perjury. (Docket Entry 48 at 10.) Thus, the Court considers the brief as his affidavit. *See Watson v. England*, No. 1:19CV945, 2022 WL 19919968, at *14

8

(M.D.N.C. May 20, 2022) ("factual allegations in . . . other court filing[s] constitute evidence for summary judgment purposes only if sworn or otherwise made under penalty of perjury"), *report and recommendation adopted*, No. 1:19CV945, 2022 WL 20615083 (M.D.N.C. July 5, 2022); *Boyd v. Tesemma*, No. 2:14CV196, 2016 WL 9109113, at *2 (E.D. Va. Apr. 26, 2016) (opposition brief to summary judgment motion filed under penalty of perjury construed as an affidavit), *aff'd*, 675 F. App'x 334 (4th Cir. 2017).

## Defendants' Motion for Summary Judgment

### A. Excessive Force Claims Against Limkemann and Hester

Defendants first argue that the excessive force claims against Hester and Limkemann should be dismissed because it is undisputed that any force used by Hester and Limkemann was not excessive. (Docket Entry 43 at 9-15.) "The Eighth Amendment protects prisoners from unnecessary and wanton infliction of pain." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (internal quotations and citation omitted). Prison officials have "an affirmative obligation to take reasonable measures to guarantee [inmates'] safety." *Id.* (internal quotations and citation omitted). Accordingly, when evaluating an excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To make this determination, the Court considers two elements: "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (internal quotations and citation omitted).

The objective component

> focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (citing *Hudson*[, 503 U.S. at 7]); *cf. Wilkins*, 559 U.S. at 37 (explaining that the extent of injury suffered may indirectly "provide some indication of the amount of force applied"). Not every "malevolent touch by a prison guard" is necessarily a constitutional violation. *Hudson*, 503 U.S. at 9. The Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 10 [internal quotation and citation omitted].

*Garris v. Gober*, No. 1:10-CV-504, 2013 WL 4502261, at *1 (M.D.N.C. Aug. 22, 2013), *aff'd*, 554 F. App'x 211 (4th Cir. 2014). In other words, "there is no 'significant injury' threshold to sustain an excessive force claim because a de minimis injury, if the product of malicious and sadistic use of force, can sustain the claim." *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015) (quoting *Wilkins*, 559 U.S. at 37-38).

As for the subjective component, "[t]he state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). The Supreme Court has considered four non-exclusive factors to assist courts in determining wantonness conduct: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Id.* (citing *Whitley*, 475 U.S. at 321) (internal quotations omitted). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such

wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.  In reviewing the record, "[i]f a reasonable jury could find . . . that correctional officers used force maliciously to punish or retaliate against an inmate, then summary judgment is not appropriate."  *Dean v. Jones*, 984 F.3d 295, 302-03 (4th Cir. 2021).

Here, considering the facts in light most favorable to Plaintiff, and considering the *Whitley* factors, there is no genuine issue of material fact as to whether the use of force by Hester and Limkemann during the April 7, 2022 incident was excessive.  The evidence demonstrates that there was a need for the use of force to try to gain control of Plaintiff as he attempted to escape capture and continued to struggle with several officers.  "Corrections officers act with a permissible motive not only when they confront immediate risks to physical safety, but also when they attempt to preserve internal order by compelling compliance with prison rules and procedures."  *Freeman v. Deas*, No. 20-7345, 2023 WL 8230805, at *2 (4th Cir. Nov. 28, 2023) (quotations and citation omitted); *see also Boose v. Adkins*, No. 3:18-cv-1480, 2020 WL 3086885, at *13 (S.D. W. Va. May 20, 2020) (explaining that "[c]ourts in this Circuit have routinely held that law enforcement and correctional officers may deploy force in response to threatening, disruptive, or assaultive behavior" and that "[t]he need for the application of force when an inmate engages in disruptive behavior and initiates physical confrontation with a correctional officer is clear") (collecting cases), *report and recommendation adopted*, No. CV 3:18-1480, 2020 WL 3078333 (S.D. W. Va. June 10, 2020).

Furthermore, as to the second and third factors, the evidence demonstrates that the amount of force used by Hester and Limkemann was proportional to their need for use of

11

said force; that is, to assist in gaining control of Plaintiff. Also, there was a reasonably perceived threat caused by Plaintiff in this situation. Both parties point to an emergency, albeit for different reasons, as the initiation of the chain of events. In any event, the video evidence demonstrates that Plaintiff attempted to violently strike Hester while fleeing the KPODD area and on the staircase. Thereafter, it is also clear that it was a rapid evolving situation with officers attempting to regain order while Plaintiff continues to struggle with officers. Under the circumstances, Hester and Limkemann's response was proportional to the threat presented. *See Boose*, 2020 WL 3086885, at *14 ("A brief deployment of force in response to disruptive and threatening behavior does not rise to the level of wanton infliction of pain that is required to establish a violation of the Eighth Amendment."), *report and recommendation adopted*, No. CV 3:18-1480, 2020 WL 3078333 (S.D.W. Va. June 10, 2020). And the force used by Limkemann and Hester was applied to a stop a reasonably perceived threat based on Plaintiff's non-compliant conduct. *See Collins v. Gang*, No. CV JKB-19-2525, 2021 WL 75159, at *3 (D. Md. Jan. 8, 2021) (officer pushing inmate away and defending himself until additional help arrived "was applied to quell a reasonably perceived threat that [inmate] would strike [officer] again").

Moreover, the undersigned concludes that Limkemann and Hester made efforts to temper the severity of a forceful response, particularly given Plaintiff's attempts to escape capture and his continuous violent struggle with prison officials. Further, while Limkemann and Hester assisted the other officers in trying to gain control of Plaintiff, they had no purpose other than to gain control of Plaintiff and maintain order. (Hester Decl. ¶ 17; Limkemann Decl. ¶ 20; *see also Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the

12

day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.")).

Plaintiff fails to present sufficient evidence to survive summary judgment. As stated above, Plaintiff's version of events differs from that of Defendants. (*See* supra § I.) However, the video evidence " 'quite clearly contradicts [pertinent portions of] the version of the story told by [Plaintiff] ... so that no reasonable jury could believe it, [thus, the C]ourt should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.' " *Witt v. W. Va. State Police, Troop 2,* 633 F.3d 272, 276 (4th Cir. 2011) (citing *Scott v. Harris,* 550 U.S. 372, 378, 380 (2007)); *see also Bostic v. Rodriguez,* 667 F. Supp. 2d 591, 605 (E.D.N.C. 2009) (citation omitted) ("[T]o the extent plaintiffs' recollection and the video are inconsistent, the video 'speak[s] for itself,' and the court considers the facts as displayed in the video.").

Here, the video discredits Plaintiff's story that he tripped on the stairs and tried to regain his balance and reached for Hester with his arm extended to keep from falling. The video also disproves Plaintiff's claim that he was beaten and assaulted by Defendants in the elevator lobby area, and his claim that Hester hit him in the leg with a baton while he was in a non-resistant position. Rather, the video clearly shows that Plaintiff violently lunged and attempted to strike Hester in the face area, and that Plaintiff continued to resist while several

13

officers tried to gain control of him.[6]  Therefore, the safety of Hester, Limkemann, and other responding officials was at issue.

Plaintiff also argues that Defendants failed to produce video footage of an area adjacent to the elevator lobby.  (Docket Entry 48 at 7.)  However, Plaintiff never sought to compel its production during discovery, nor is there any reason to permit such at this time.  *See* Rule 56(d) (setting forth grounds to warrant additional discovery during summary judgment stage); *Evans*, 80 F.3d at 961 ("[T]he nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery . . . before the district court ruled.").  Thus, without other corroborating evidence, Plaintiff's response is akin to a self-serving affidavit with unsupported assertions that is insufficient to defeat summary judgment.  *See id.* ("self-serving opinions without objective corroboration" not enough at summary judgment stage); *Boyd*,

---

[6] While Hester's declaration doesn't indicate such, the video shows an object in her hand while she was in the elevator lobby area.  (*See* Elevator Lobby video at 10:54:31-10:54:45.)  Even viewed in light most favorable to Plaintiff and adopting Plaintiff's version as being hit with a baton and kicked by Hester, such use of force would be reasonable given Plaintiff's resistance to officers.  *See Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999) ("If [the Court] fail[s] to accord due deference to the officers' efforts [to restrain a combative prisoner], we would give encouragement to insubordination in an environment which is already volatile enough."), *abrogated on other grounds by Short v. Harman*, 87 F.4th 593 (4th Cir. 2023); *Adkins v. McDonald*, No. 5:14-CT-3169-F, 2016 WL 7655775, at *4 (E.D.N.C. Feb. 23, 2016) (baton strike justified where the plaintiff repeatedly disobeyed orders and grabbed correctional officer's wrist); *aff'd*, 667 F. App'x 395 (4th Cir. 2016).  The results would be the same if the object were a taser.  *See Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (plaintiff "failed to prove that the guards had used the stun gun sadistically or maliciously"); *Wallace v. Thomas*, No. C.A.3:06-261-HMH-JRM, 2007 WL 397486, at *5 (D.S.C. Jan. 31, 2007) ("[T]he officers' actions in using one spray of mace and tasing Plaintiff twice appears to be an appropriate use of force because of the need to gain control over Plaintiff."); *Benson v. DeLoach*, No. C/A 8:09-00041GRABHH, 2009 WL 3615026, at *7 (D.S.C. Oct. 28, 2009) ("[C]ourts have held that officers may use a taser in various situations to subdue a belligerent or uncooperative arrestee, inmate or detainee." (collecting cases)).

2016 WL 9109113, at *6 (prisoner's self-serving affidavit not enough to defeat summary judgment).

In sum, under the circumstances the *Whitley* factors weigh in favor of Limkemann and Hester, thus "no reasonable jury could find that [they] applied force maliciously and sadistically for the very purpose of causing harm[.]" *Geddings v. Roberts*, No. 1:15CV264, 2018 WL 1626116, at *12 (M.D.N.C. Mar. 30, 2018). The Court should therefore grant summary judgment to Limkemann and Hester as to Plaintiff's excessive force claim.

### B. Bethea's Lack of Personal Involvement

Defendants next argue that Bethea should be entitled to summary judgment as to Plaintiff's excessive force claim because he was not personally involved in the April 2022 incident. (Docket Entry 43 at 15.) "As a general matter, a law officer may incur [individual Section] 1983 liability only through affirmative misconduct." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 202 (4th Cir. 2002) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535-36 (1981)). "[Section] 1983 must be 'read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)). Thus, "it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotations and citation omitted). There is no basis here to find liability on the part of Bethea as all Defendants attest that Bethea was not present, nor participated in the incident at issue. (Bethea Decl. ¶ 5; Limkemann Decl. ¶ 21; Hester Decl. ¶ 18.) Moreover, Plaintiff's response brief does not create a genuine issue of material fact as to Bethea's involvement in the use of force during

15

Case 1:22-cv-00610-CCE-JLW   Document 50   Filed 11/01/24   Page 15 of 18

the incident.[7]  Therefore, summary judgment should be granted in favor of Bethea as to Plaintiff's excessive force claim.

### C. Qualified Immunity

Alternatively, Defendants argue that they are entitled to qualified immunity. (Docket Entry 43 at 15-16.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 547 (4th Cir. 2010) (citation omitted).

Here, Plaintiff has not demonstrated a violation of a constitutional right. Instead, the undisputed evidence illustrates that Limkemann and Hester did not use excessive force during the April 2022 incident, and Bethea was not involved in the incident. Therefore, this Court concludes that Defendants are entitled to qualified immunity. *See Abney v. Coe,* 493 F.3d 412,

---

[7] According to Plaintiff, after sustaining two taser shocks, Defendants including Bethea, *removed* the prongs due to their ineffectiveness. (Docket Entry 48 at 3.) In addition, Bethea carried Plaintiff to "receiving," denied that any taser had been used on Plaintiff, and verbally threatened Plaintiff at the hospital. (*Id.* at 3-7.) Beyond that, Plaintiff does not specifically describe Bethea's actual involvement, specifically any use of force, during the incident.

16

415 (4th Cir. 2007) (finding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there").

### Plaintiff's Motion for Summary Judgment

Plaintiff also moves for summary judgment as to the claims against Defendants in this matter. (Docket Entry 47.) As determined above and based on the facts in the light most favorable to Plaintiff, he has failed to establish a genuine issue of material fact and summary judgment should be granted in favor of Defendants. Therefore, Plaintiff's motion for summary judgment should be denied. *See Grady v. McPhearson*, No. 5:17-CT-3211-FL, 2020 WL 5821840, at *5 (E.D.N.C. Sept. 30, 2020) ("Because the court has determined that, based on facts in the light most favorable to plaintiff, he has failed to establish a genuine issue of material fact precluding summary judgment on his claims, plaintiff's motion for summary judgment must fail."), *aff'd sub nom. Grady v. McPherson*, 840 F. App'x 745 (4th Cir. 2021); *Brandon Chrishon Polk v. Stanly Cnty.*, No. 1:22CV613, 2024 WL 1287372, at *15 (M.D.N.C. Feb. 23, 2024) (concluding that defendants' summary judgment motion should be granted and plaintiff's cross motion be denied), *report and recommendation adopted sub nom. Polk v. Stanly Cnty.*, No. 1:22CV613, 2024 WL 1286241 (M.D.N.C. Mar. 26, 2024).

### III. CONCLUSION

For the reasons sated herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 42) be **GRANTED**, Plaintiff's Motion for Summary Judgment (Docket Entry 47) be **DENIED**, and this action be dismissed with prejudice as to Defendants Tony Bethea, Rosalyn Hester, and Jeffrey Limkemann.

**IT IS FURTHER RECOMMENDED** that this action be dismissed without prejudice as to Defendant Officer Woods pursuant to Federal Rule of Civil Procedure 4(m).

/s/ Joe L. Webster
United States Magistrate Judge

November 1, 2024
Durham, North Carolina

18

Case 1:22-cv-00610-CCE-JLW   Document 50   Filed 11/01/24   Page 18 of 18